UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

GLYNN JONES,                                :

          Plaintiff,        :

    - against -                                :        **MEMORANDUM DECISION**

BRIAN FISCHER et al.,                       :        07 Civ. 7589 (DC)

          Defendants.       :

- - - - - - - - - - - - - - - - - -x

**APPEARANCES:**     GLYNN JONES
                     Plaintiff Pro Se
                     901 Goldfloss St.
                     Winston Salem, North Carolina 27107

                     ANDREW M. CUOMO, Esq.
                     Attorney General of the State of New York
                     Attorney for Defendants
                          By: Jeb Harben, Esq.
                              Assistant Attorney General
                     120 Broadway
                     New York, New York 10271

**CHIN, District Judge**

    Pro se plaintiff Glynn Jones brings this prisoner civil rights action pursuant to 42 U.S.C. § 1983 alleging that defendants (1) subjected him to cruel and unusual punishment by failing to provide him with adequate medical care and (2) violated his right to due process by transferring him between prison facilities while he was incarcerated. Plaintiff also asserts various tort claims arising from his imprisonment. Defendants move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons that follow the motion is granted and the complaint is dismissed.

## BACKGROUND

### A. The Facts

For the purposes of this motion, the facts alleged in the complaint are assumed to be true. They may be summarized as follows:

#### 1. The Parties

Plaintiff brings this civil rights action against twenty-one employees of the State of New York.[1] Defendants Carpinello, B. Cohn, A. Holmes, L. Opler, R. Myers, D. Sawyer, J. Dorr, M. Steinbacher, Tofte, and Brown are employees of the New York State Office of Mental Health ("OMH"). (Compl. P. 2-4).[2] Defendants Brian Fischer, W. Connolly, L. Marshall, Kaplan, Larkin, Perilli, Carver, Pace, Stone, and R. Raymond are employees of the New York State Department of Correctional Services ("DOCS"). (Id. P. 3-5). Defendant Novello is an employee of the New York State Department of Health. (Id. P. 2).[3]

#### 2. Plaintiff's Incarceration

Plaintiff was arrested for a violation of his New York State parole in North Carolina on November 29, 2006, and was held

---

[1]   Other than defendant Fischer, none of the parties are referred to by their full names in the complaint and as a result are not here.

[2]   Plaintiff has numbered certain paragraphs in his complaint and not others. Where paragraphs are numbered, they are referred to by the paragraph number, indicated by "Compl. ¶." Where they are not numbered, references are to the page number, indicated by "Compl. P."

[3]   Defendants Kaplan, Novello, and Perilli have not been served, but the claims against them are dismissed nonetheless.

there until March of 2007. (Id. ¶¶ 1, 4). He was returned to New York State to serve one year in prison for the violation, initially at Rikers Island and then at Downstate Correctional Facility. (Id. ¶¶ 3-5). He was transferred to Fishkill Correctional Facility, a medium security prison, on April 13, 2007, where he was housed in a dormitory cell with other inmates. (Id. ¶¶ 7, 8).

Plaintiff, who suffers from obsessive compulsive disorder and post-traumatic stress disorder and has difficulty seeing and hearing (id. ¶ 2), received medical care at each facility in which he was housed. (Id. ¶¶ 5-8, 26, 28, 33, 35, 36). Plaintiff wrote to defendant Connolly, Superintendent of the Fishkill Correctional Facility on April 29, 2007, requesting that he be housed in a single cell due to his mental disorders. (Id. ¶ 9). He was informed by defendant Tofte that he could have a single cell in a maximum security facility or could have one when it became available at Fishkill. (Id. ¶ 10). Defendant Tofte later informed plaintiff that "they want to make you a max." (Id. ¶ 15). Thereafter, on June 4, 2007, plaintiff was transferred to the maximum security Sing Sing Correctional Facility. (Id. ¶ 16).

While the complaint does not state that plaintiff was housed in a single cell at Sing Sing, it does not mention any single cell requests made after his transfer. (See id. ¶¶ 13-38). On June 29, 2007, plaintiff was informed by defendant Brown that his mental health status had been changed to "level one" in

response to his letter to defendant Connolly requesting a single cell, thereby causing his transfer to Sing Sing. (Id. ¶ 19). Defendant Brown told plaintiff that he should "be careful" what he asks for. (Id.). While at Sing Sing, plaintiff was housed on a cell block with an inmate with whom he previously had a physical altercation. (Id. ¶ 21). While incarcerated, plaintiff made numerous reasonable accommodation requests, filed grievances, and wrote letters to prison and government officials about the conditions of his confinement. (Id. ¶¶ 9-13, 18, 25, 27, 29, 32, 34). Plaintiff's reasonable accommodation requests were denied because doctors determined that he did not have a medical condition that required accommodation. (Id. Ex. Q).

On July 3, 2007, plaintiff's hearing was damaged by a fireworks display outside the Sing Sing facility. (Id. ¶ 24). On August 25, 2007, plaintiff was injured when he fell while walking down a flight of stairs. (Id. ¶ 30).

B.  **Prior Proceedings**

Plaintiff's initial complaint was received on July 17, 2007. On August 27, 2007, Chief Judge Kimba Wood dismissed plaintiff's claims arising out of incidents that took place in North Carolina pursuant to 28 U.S.C. § 1391(b). Jones v. Fischer, No. 07 Civ. 7589 (KW) at *1 (S.D.N.Y Aug. 27, 2007). Because a "substantial part" of the events occurred in North Carolina and not in the Southern District of New York, plaintiff's claims against individuals located in that state were dismissed. Id. at *2.

- 4 -

Plaintiff filed an amended complaint on September 18, 2007, alleging that defendants Carver, Connolly, Kaplan, Larkin, Marshall, Pace, Perilli, Raymond, Steinbacher, Stone, and Tofte violated his constitutional rights by committing medical malpractice, acting with deliberate indifference to his medical needs, discriminating against him as a disabled person, subjecting him to cruel and unusual punishment, torturing him psychologically, and denying him his right to due process (first count). (Compl. P. 19). The defendants named in that count hold a variety of positions in OMH and DOCS and some were directly involved in plaintiff's medical care. (Id. P. 1-5). Plaintiff further alleges that defendants Carpinello, Cohn, Dorr, Fischer, Holmes, Myers, Novello, Opler, and Sawyer, each of whom serve supervisory roles in either DOCS or OMH, acted with deliberate indifference to his medical needs by failing to adequately supervise their subordinates. (Id. P. 20-21). Plaintiff alleges that failure caused him to suffer permanent physical injuries (second count). (Id.). Plaintiff seeks damages and certain injunctive relief. (Id. P. 22).[4]

## DISCUSSION

On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in his favor. Bernheim v. Litt,

---

[4] The pagination of the plaintiff's complaint suggests that he filed it with the Court missing the page that contained the amount of damages he is seeking.

- 5 -

79 F.3d 318, 321 (2d Cir. 1996); see Erickson v. Pardus, 127 S. Ct. 2197, 2199 (2007) (per curiam); Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

In its recent decision in Bell Atlantic Corp. the Supreme Court announced the "retirement" of the oft-quoted "no set of facts" language from Conley v. Gibson, 355 U.S. 41, 45-47 (1957), adopting in its place a "plausibility" standard. Bell Atl. Corp., 127 S. Ct. at 1969. As interpreted by the Second Circuit, Bell Atlantic Corp. did not announce a "universal standard of heightened fact pleading, but . . . instead requir[es] a flexible 'plausibility standard,' which obligates a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007). The question is whether the pleading alleges "'enough facts to state a claim for relief that is plausible on its face.'" Patane v. Clark, 508 F.3d 106, 111-12 (2d Cir. 2007) (quoting Bell Atl. Corp., 127 S. Ct. at 1974).

When considering a claim made by a pro se litigant, the court is to liberally read the pleadings and "interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

A. **Administrative Exhaustion**

   1. **Applicable Law**

The PLRA requires an inmate to exhaust all available administrative remedies before filing suit in federal court. 42

- 6 -

U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

To exhaust, "a prisoner must grieve his complaint about prison conditions up through the highest level of administrative review" before filing suit. Porter v. Goord, No. 01 Civ. 8996 (NRB), 2002 WL 1402000, at *1 (S.D.N.Y. June 28, 2002) (citing Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001) ("[G]rievances must now be fully pursued prior to filing a complaint in federal court."); Fletcher v. Haase, No. 99 Civ. 9549 (GEL), 2002 WL 313799, at *1 (S.D.N.Y. Feb. 27, 2002) ("This lawsuit . . . can only proceed after [plaintiff] has exhausted any available administrative remedies, including all appellate remedies provided within the system."); see also Gibson v. Goord, 280 F.3d 221, 223 (2d Cir. 2002) (noting that plaintiff "had not pursued the available remedy of filing a 'level two grievance'"). "Complete exhaustion" is therefore required. Graham v. Cochran, No. 96 Civ. 6166 (LTS)(RLE), 2002 WL 31132874, at **1, 6 (S.D.N.Y. Sept. 25, 2002) (dismissing the action "because [plaintiff] unreasonably failed to appeal").

Prisoners must complete a three-step inmate grievance procedure ("IGP") to exhaust their administrative remedies. See, e.g., Baskerville v. Blot, 224 F. Supp. 2d 723, 729 (S.D.N.Y. 2002); Cruz v. Jordan, 80 F. Supp. 2d 109, 117-18 (S.D.N.Y.

1999); N.Y. Correct. Law § 139; N.Y. Comp. Codes R. & Regs. tit. 7, § 701.7. As the Second Circuit has explained, the IGP "requires an inmate to: (1) file a grievance with the [Inmate Grievance Resolution Committee], 7 N.Y.C.R.R. § 701.7(a)(1); (2) appeal to the superintendent within four working days of receiving the [Inmate Grievance Resolution Committee]'s written response, 7 N.Y.C.R.R. § 701.7(b)(1); and (3) appeal to the [Central Office Review Committee] in Albany, New York within four working days of receipt of the superintendent's written response, 7 N.Y.C.R.R. § 701.7(c)(1)." Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004). The system "permits inmates to file internal grievances as to virtually any issue affecting their confinement." Flanagan v. Maly, No. 99 Civ. 12336 (GEL), 2002 WL 122921, at *1 (S.D.N.Y. Jan. 29, 2002) (citations omitted).

If a "prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA," a three-part inquiry is required. Hemphill v. State of New York, 380 F.3d 680, 686 (2d Cir. 2004). First, the court must determine whether administrative remedies were made available to the prisoner. Id. Second, the court must consider whether the defendant failed to raise or preserve the exhaustion defense or is estopped from raising it because one of his actions inhibited the inmate's exhaustion of remedies. Id. Lastly, if it is determined that administrative remedies were available and the defendant did not fail to raise and is not estopped from raising

- 8 -

the non-exhaustion defense, but the plaintiff did not exhaust the administrative remedies nonetheless, the court "should consider whether 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.'" Id. (quoting Giano v. Goord, 380 F.3d 670, 676 (2d Cir 2004)).

2. **Application**

Plaintiff's complaint fails to allege that he exhausted the administrative remedies available to him with respect to any of his claims, or that his failure is excused for any reason.

As to failure to exhaust, the complaint indicates that the plaintiff filed grievances related to his request for a single person cell while at Fishkill (Compl. ¶ 13), his mental health being downgraded to "level one" (id. ¶ 17), his fall on the stairs (id. Ex. M), and his request for a shower pass, auxiliary hearing aids, and an interpreter. (Id. Ex. Q). Plaintiff withdrew his grievance concerning the denial of his single cell request (id. ¶ 13), and received IGRC responses to his grievance based on the downgrading of his mental health status (id. Ex. H), his grievances related to his fall on the stairs (id. Ex. M), and his request for a shower pass and other accommodations. (Id. Ex. Q). Plaintiff failed to appeal any of those rulings to the CORC.

Nor is plaintiff's failure to exhaust excused under the required three-part inquiry. Administrative remedies were

- 9 -

clearly made available to the plaintiff, as he filed a number of grievances during his stay in prison. (Id. Exs. H, M, Q). Indeed, plaintiff has included IGRC responses to his grievances, signed by him to document receipt, each of which bear instructions on how to appeal the IGRC's ruling. (Id.).

Plaintiff's decision to withdraw his grievance regarding his single cell request because defendant Stone told him he would receive one at a later date is not sufficient to overcome defendants' failure to exhaust defense. State officials have been estopped from asserting a failure to exhaust defense where they have prevented prisoners from filing grievances by using violence, threats or the denial of means with which to file grievances, not where they have convinced plaintiffs not to file grievances by agreeing to grant their requests. See, e.g., Ruggiero v. County of Orange, 467 F.3d 170, 178 (2d Cir. 2006); Hemphill, 380 F.3d 680 at 688. Here, defendants did not prevent plaintiff from exhausting his administrative remedies; they told him they would grant his request and he could have gone forward with the grievance when they failed to do so.

Nor does the special circumstances exception excuse Jones's failure to exhaust. The special circumstances inquiry "must be determined by looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." Giano, 380 F.3d 670 at 678. Administrative remedies were available to Jones, and the

procedure for appealing IGRC decisions was provided to him when those decisions were returned. His difficulty hearing and seeing does not excuse his failure to exhaust because the circumstances did not prevent the plaintiff from grieving in the normally required way. Plaintiff demonstrated his ability to fill out grievance forms by doing so throughout his year in prison.

Because plaintiff failed to exhaust his administrative remedies with respect to his complaints of cruel and unusual punishment, violation of his right to due process, conspiracy to violate his civil rights, failure to protect, and discrimination, each is dismissed against all defendants as a matter of law under the PLRA.

### C. The Merits

Even assuming Jones had exhausted the administrative remedies available to him or that exhaustion is excused, the complaint must be dismissed on the merits.

#### 1. Section 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that defendants, while acting "under color of state law," deprived him of his constitutional or statutory rights. Shabazz v. Vacco, No. 97 Civ. 3761 (DC), 1998 WL 901737, at *2 (S.D.N.Y. Dec. 28, 1998) (citing Pitchell v. Callan, 13 F.3d 545, 547-48 (2d Cir. 1994)). To withstand a motion to dismiss, a § 1983 complaint must set forth specific factual allegations indicating a deprivation of constitutional rights. Shabazz, 1998

- 11 -

WL 901737, at *2; see Alfaro Motors v. Ward, 814 F.2d 883, 887 (2d Cir. 1987) ("[B]road, simple, and conclusory statements are insufficient to state a claim under § 1983.").

As to particular defendants, a plaintiff must allege specific facts to demonstrate that a defendant was personally or directly involved in the violation, that is, that there was "personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal." Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001). The personal involvement requirement may be satisfied by showing the defendant (1) personally participated in the violation, (2) was grossly negligent in supervising subordinates who committed wrongful acts, or (3) exhibited deliberate indifference by failing to act on information indicating unconstitutional acts were occurring. Id. at 154.

2.  **Cruel and Unusual Punishment**

   a.  **Applicable Law**

To maintain a claim for cruel and unusual punishment in violation of the Eighth Amendment based on a lack of medical care, a plaintiff must show that defendants were deliberately indifferent to his serious medical needs. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The standard for deliberate indifference has both an objective and a subjective prong. See Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993) (citations omitted). The

- 12 -

objective prong requires that the alleged deprivation of care be sufficiently serious in objective terms: The plaintiff's condition must present a "condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway, 37 F.3d at 66 (quoting Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)). The subjective prong requires a showing that the defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm. Hathaway, 37 F.3d at 66. "[T]he charged official must act with a sufficiently culpable state of mind." Id. Claims based solely on disagreements over medical care decisions are not cognizable claims under 42 U.S.C. § 1983. Chance v. Armstong, 143 F.3d 698, 703 (2d Cir. 1998).

### b. Application

Plaintiff's cruel and unusual punishment claim fails to allege that the majority of the defendants were personally involved. Plaintiff offers no specific factual allegations as to how defendants Carver, Carpinello, Cohn, Connolly, Dorr, Fischer, Holmes, Kaplan, Larkin, Marshall, Myers, Novello, Opler, Pace, Raymond, Sawyer, and Steinbacher were grossly negligent in supervising subordinates who committed wrongful acts, or exhibited deliberate indifference by failing to act on information indicating unconstitutional acts were occurring. The complaint broadly alleges that (1) some defendants violated their "duty to tr[ai]n, supervi[s]e and discipline" their subordinates

- 13 -

and were therefore "deliberately indifferent" to the constitutional violations he suffered[5] and (2) some defendants failed to take adequate action after he notified them of his complaints by letter.[6] While each is identified by name and title, specific allegations as to how these defendants acted with gross negligence or failed to remedy a wrong for which they were responsible as supervisory officials are wholly absent. The cruel and unusual punishment claims are therefore dismissed against defendants Carver, Carpinello, Cohn, Connolly, Dorr, Fischer, Holmes, Kaplan, Larkin, Marshall, Myers, Novello, Opler, Pace, Raymond, Sawyer, and Steinbacher for failure to allege their personal involvement with sufficient specificity.[7]

Plaintiff has not alleged that any of the remaining defendants, each of whom directly participated in the medical treatment upon which his claim is based, had the culpable state of mind. Even assuming that the harm suffered was sufficiently serious, because plaintiff's claims for failure to provide medical treatment and failure to provide reasonable accommodations fail to sufficiently allege deliberate indifference, both are dismissed. Plaintiff's complaint mentions

---

[5] Plaintiff claims that defendants Carpinello, Cohn, Dorr, Fischer, Holmes, Myers, Novello, Opler, and Sawyer violated his constitutional rights in this manner.

[6] Plaintiff wrote letters complaining of the conditions of his confinement to defendants Brown, Carpinello, Cohn, Dorr, Fischer, Holmes, Marshal, Myers, Novello, Opler, Pace, Raymond, Sawyer, and Steinbacher.

[7] Plaintiff's claim for injuries sustained as a result of the July 3, 2007, fireworks display is dismissed against all defendants because it does not to allege that any defendant was personally involved in the incident.

more than ten visits with medical health professionals related to his hearing, vision, and mental health difficulties.  Nowhere in the complaint are there factual allegations that any defendants consciously disregarded an excessive risk to his safety when treating him; it alleges only that their conclusions about his ability to function without the accommodations he felt he needed differed from his own.  Claims based solely upon disagreements with medical decisions, however, are not cognizable under 42 U.S.C. § 1983.  Chance, 143 F.3d 698 at 703.  Due to the absence of an allegation that any of the defendants consciously disregarded an excessive risk to his safety, plaintiff's cruel and unusual punishment claim based on the medical care he received is dismissed against defendants Perilli, Brown, Stone, and Tofte.[8]

3.   **Due Process**

   a.   **Applicable Law**

To state a § 1983 claim based on an alleged violation of due process, a plaintiff must allege that (1) he possessed a

---

[8]   Plaintiff's claim for medical malpractice is dismissed because it is not a cognizable claim under 42 U.S.C § 1983. Plaintiff's psychological torture claim, understood by the Court to be a claim based upon mental and emotional injuries suffered as a result of cruel and unusual punishment, is dismissed along with the underlying claim.  Plaintiff's claim based on his falling down the stairs and being unable to participate in vocational programs as a result of the inadequate medical care provided to him are likewise dismissed along with the underlying claim.  Plaintiff's failure to protect claim, arising out of being housed with his "known assailant," is dismissed because he has failed to allege that he suffered any physical injuries, as required prior to making a claim for mental or emotional injury under 42 U.S.C. § 1997e(e).  Cox v. Malone, 199 F. Supp. 2d 135, 139 (S.D.N.Y. 2002).

- 15 -

liberty or property interest protected by the Constitution or federal statutes and (2) he was deprived of that liberty or property interest without due process. Ciambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir. 2002) (citing Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995)). A prisoner does not have a constitutionally or statutorily protected right to be housed in any particular prison facility after being convicted, even where the transfer is made from a medium to a maximum security facility. Prins v. Coughlin, 76 F.3d 504, 507 (2d Cir. 1996); Meachum v. Fano, 427 U.S. 215, 225-27 (1976). A prisoner claiming his due process rights were violated by a transfer must therefore establish that prison officials did more than simply transfer him from one facility to another. See Meachum, 427 U.S. 215 at 225.

Prisoners do, however, have a constitutionally protected First Amendment right to file grievances related to the conditions of their confinement, and actions taken to retaliate against a prisoner for exercising that right may be a violation of the prisoner's First and Fourteenth Amendment rights. Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996). To state a claim of retaliation a prisoner must allege that he engaged in constitutionally protected conduct, an adverse action was taken against him, and his engaging in the protected conduct was a substantial or motivating factor in the adverse action taken against him by prison officials. Bennett v. Goord, 343 F.3d 133,

137 (2d Cir. 2003). An action is adverse if it would "deter a similarly situated plaintiff from exercising his or her constitutional rights." Dawes v. Walker, 239 F.3d 489, 493 (2d Cir. 2001), overruled on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

Because retaliation claims by prisoners are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration," retaliation claims are approached with "skepticism and particular care" and non-conclusory assertions must be made in the complaint. Bennett, 343 F.3d 133 at 137.

### b. Application

Plaintiff states that defendant Connolly retaliated against him for requesting reasonable accommodations and that defendant Brown prohibited him from participating in the Community Orientation and Reentry Program ("CORP"), both in violation of his right to due process. No direct involvement by any of the other defendants is alleged and the due process claims against all other defendants are dismissed for that reason.

Plaintiff's claim against Connolly does not establish that retaliation was a substantial or motivating factor in the decision to transfer him. Defendant Brown's statement that "they want to make you a max" (Compl. ¶ 15), and defendant Brown's statement to the plaintiff that his mental health level was changed from "level two" to "level one" because of the reasonable

- 17 -

accommodation request he made to defendant Connolly (id. ¶ 19), are insufficient to establish the retaliatory motive behind his transfer. Plaintiff was informed on or about May 2, 2007, that his request for a single cell could not be granted at that time unless he were transferred to a maximum security prison (Id. ¶ 10). Accordingly, he was then transferred to a maximum security facility. (Id. ¶ 16).

Plaintiff's claim based upon his exclusion from the Office of Mental Health Community Orientation and Reentry Program is dismissed because although he might have been eligible for participation, he has not maintained that he had a constitutionally or statutorily protected right to do so as required to establish a due process violation claim. Ciambrello, 292 F.3d 3-7 at 313.[9]

### 4. Conspiracy to Violate Civil Rights

#### a. Applicable Law

To maintain a conspiracy to violate civil rights claim under 42 U.S.C. § 1985, plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) (quoting Romer v. Morgenthau, 119 F.Supp.2d 346, 363 (S.D.N.Y.

---

[9] Plaintiff has failed to demonstrate that he was intentionally treated differently from others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. His claim for discrimination therefore fails and is dismissed. See Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995).

2000)). An allegation made in conclusory fashion will not support a claim of conspiracy to violate civil rights. See Webb, 340 F.3d 105 at 111; Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983) ("a complaint containing only conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.").

      b.   **Application**

Plaintiff's claim fails as he makes only a conclusory allegation that defendants Connolly, Pace, Stone, and Tofte conspired to violate his civil rights and did so by transferring him to Sing Sing Correctional Facility and denying his reasonable accommodation requests. (Compl. P. 1). Plaintiff's claim, brought under 42 U.S.C. § 1983 but more appropriately based on 42 U.S.C. § 1985, is dismissed. Conclusory allegations alone are insufficient to establish a conspiracy claim. Plaintiff's allegation that defendant Tofte told him that "they want to make you a max" (Compl. ¶ 15) is too vague to support an agreement among the defendants to deprive the plaintiff of his civil rights. As plaintiff has done nothing more than state conclusorily that defendants engaged in a conspiracy to violate his civil rights, the conspiracy claim is dismissed.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted and plaintiff's claims are dismissed in their entirety. I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this decision would not be taken in good faith.

The Clerk of the Court shall enter judgment dismissing the complaint.

SO ORDERED.

Dated: New York, New York
August 7, 2008

_____
DENNY CHIN
United States District Judge